UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SONIA COLON,

    Plaintiff,

v.                                  CASE NO. 8:12-CV-2011-T-27MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for review of the administrative denial of disability insurance benefits (DIB), period of disability benefits, and supplemental security income (SSI). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff contends that the Administrative Law Judge (ALJ) failed to (1) recognize her tibial and peroneal neuropathies as severe impairments; (2) properly consider her treating physician's and nurse practitioner's opinions; (3) properly evaluate her residual functional capacity (RFC); (4) pose a complete hypothetical question to the vocational expert (VE); and (5) properly evaluate her complaints of pain. After considering the parties' briefs and the administrative record in this case, I recommend the matter be remanded for further administrative proceedings.

    *A.*    *Background*

Claimant Sonia Colon was born on June 21, 1985. (R. 30) She did not complete high school but holds a GED. (Id.) She has past work experience as a cashier, receptionist, sales clerk, and nursery school attendant. (R 18) Claimant alleged disability commencing June 16, 2009. (R. 10) After a hearing, the ALJ found Claimant had the severe impairments of spina bifida, asthma, neurogenic bladder, migraines, and pulonary stenosis. (R 12) Aided by the testimony of a VE, the

ALJ determined the Claimant was not disabled as she had the RFC to perform light work "except the claimant is capable of occasionally lifting 20 pounds and 10 pounds frequently, able to sit for six hours, able to stand/walk for six hours, occasionally climb, balance, stoop, kneel, crouch, or crawl, but never climb ladders, ropes, or scaffolds. Moreover, the claimant must avoid unprotected heights and pulmonary irritants." (R. 15) The ALJ also found that, with this RFC, Plaintiff could perform her past relevant work. (R. 18) The Appeals Council denied review. Plaintiff, who has exhausted her administrative remedies, filed this action.

      B.      *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one

that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

Plaintiff argues the ALJ erred in five ways: (1) he failed to recognize all of her severe impairments; (2) he improperly discounted the opinions of her treating neurologist and nurse practitioner while at the same time assigning great weight to state agency physicians; (3) he

3

improperly evaluated her RFC; (4) he posed an incomplete hypothetical question to the VE; and (5) he improperly discounted her credibility and complaints of pain.

### 1. Nurse Practitioner's and Treating Neurologist's Opinions

Plaintiff contends that the ALJ improperly discounted the opinion of Marty Folsom, A.R.N.P., who opined that Plaintiff was not capable of even a low stress job. In a related argument, Plaintiff also points out that the ALJ appears to have discounted the opinion of Harish Patel, M.D., Plaintiff's treating neurologist. Instead, the ALJ relies on the opinion of consultative physician Michael Duchesneau, M.D. and the RFC assessment of non-examining physician Ronald Kline, M.D.

Mr. Folsom completed a physical RFC questionnaire on Plaintiff on January 28, 2011. (R. 452-58) He noted that he had treated Plaintiff five times over the past year and that she suffered from spina bifida (a condition for which she had multiple back surgeries during her childhood), migraines, and recurring urinary tract infections, among other impairments. (R. 452) Mr. Folsom opined that Plaintiff is constantly in pain, could not sit or stand for more than five or 10 minutes at a time, and would require four or five breaks (of five to ten minutes each) every hour. He concluded that Plaintiff is incapable of even low stress jobs and would miss work more than four days per month. (R. 452-58) Mr. Folsom qualified his conclusions, however, by emphasizing: "Info obtained through observation and patient report. I am not a certified disability provider. Suggest evaluation by certified provider." (R. 458)

A nurse practitioner is not an "acceptable medical source" for purposes of establishing an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). However, a nurse practitioner is an "other" medical source used "to show the severity of impairments and how the impairments affect ability

to work. 20 C.F.R. §404.1513(d)(1). Opinions from nurse practitioners are "important and should be evaluated on key issues such as impairment severity and functional effects." *See* SSR 06-03p (Aug. 9, 2006). Specifically, SSR 06-03p, clarifying existing SSA policies, provides:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licenced clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources .... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. The ruling further directs the ALJ to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.*

Here, the ALJ stated, "Nurse Folsom offered a less than sedentary RFC opinion regarding the claimant's ability to perform work. His opinion was given no weight because he is not a medically acceptable source." (R. 18) The ALJ's decision to accord the nurse practitioner's opinions no weight because he is a nurse practitioner is error. The nurse practitioner evaluated Plaintiff six times from February 2010 through January 2011, and Plaintiff testified at the administrative hearing that she was continuing her treatment with Mr. Folsom. (R. 33, 452) Mr. Folsom's records include his treatment notes and lab results (R. 501-510) and, importantly, he is one of the few providers whose records are included in the medical evidence. In fact, throughout the ALJ's decision, the ALJ notes the lack of medical evidence: "At the outset, the undersigned notes that there is very little evidence regarding the claimant's medically determinable, severe impairments within the record before or around the time of the alleged onset date." (R. 17) Later in his opinion, the ALJ states:

5

"[A]s discussed earlier, there is not enough evidence in this case to support the claimant's more restrictive allegations. In addition, no acceptable medical source has provided testimony or opinion that is contrary to [Drs. Kline and Duchesneau, discussed below]." (R. 17-18)

Consequently, I find the ALJ erred by rejecting Mr. Folsom's opinions simply on the ground that he is not an acceptable medical source. While Mr. Folsom does not qualify as a treating source, he constitutes an "other source" under the regulations, and as such, the ALJ was required to consider his opinions with respect to Plaintiff's limitations. Remand is necessary so that the ALJ can consider Mr. Folsom's opinions in light of SSR 06-03p. *See generally Baliles v. Astrue,* 2011 WL 3961818, at *6 (M.D. Fla. Sept. 8, 2011) (noting that nurse practitioner's opinions must be considered though standing alone "are not entitled to any particular deference"); *Garrison v. Astrue,* 2011 WL 4552358, at *4-5 (M.D. Fla. Sept. 30, 2011) (ALJ erred by failing to discuss nurse practitioner's treatment notes); *Turner v. Astrue,* 2008 WL 4489933, at *13-14 (S.D. Ala. Sept. 30, 2008) (ALJ erred by rejecting nurse practitioner's opinions on the ground that he is not a medical doctor).[1]

Plaintiff also argues the ALJ improperly discounted Dr. Patel's opinions. The Commissioner responds that (1) Patel was not a treating source as he saw Plaintiff only twice and (2) his records do not constitute medical opinions because they "do not reflect the severity of the conditions diagnosed." (Doc. 12 at 7).

Medical opinions are "statements from physicians and psychologists or other acceptable

---

[1] Had the ALJ evaluated Mr. Folsom's treatment notes and opinions together with the rest of the medical evidence and assigned them little or no weight, I would find no error. *See e.g. Gray v. Astrue,* 2012 WL 7170492, *8 (M.D. Fla. Nov. 9, 2012) (ALJ did not err in considering nurse practitioner's opinions where ALJ appropriately considered the nurse practitioner's opinion evidence along with other evidence under considerations listed by regulations at 20 C.F.R. §§ 404.1527 and 416.927).

medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Further, a court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart*, 662 F.2d at 735.

Here, the ALJ discussed Dr. Patel's findings but did not specify the weight assigned to them. (R. 13-14) Dr. Patel treated Plaintiff four times in September, October, and December 2010, in addition to ordering an MRI, an EEG, and other lab testing.[2] (R. 430-47) His records are

---

[2] The Commissioner's argument that Dr. Patel is not a treating source is without merit. He treated Plaintiff four times, not twice. (R. 430-47) In any event, the length of the treatment relationship and the frequency of examination is but one factor the ALJ considers in assigning weight to a medical opinion. *See* 20 C.F.R. §§ 404.1502, 416.902.

comprehensive, although I agree with the Commissioner that they contain more raw data than they do findings on the severity of Plaintiff's condition. Nonetheless, they indicate that during a nerve conduction test in October 2010 of Plaintiff's lower extremities, Dr. Patel detected signs of tibial and peroneal neuropathies. (R. 434) This corroborates Plaintiff's testimony that about a year and a half before the administrative hearing, she began experiencing extreme leg pain and weakness. (R. 43-44) This is an example culled from Dr. Patel's records to illustrate that because the ALJ does not specify the weight he assigned Dr. Patel's findings, I cannot determine whether his evaluation is supported by substantial evidence.

Here is another example. The ALJ expressly assigned great weight to the opinions of Drs. Kline and Duchesneau. (R. 17-18) Dr. Duchesneau conducted one consultative examination of Plaintiff in October 2009 – a year before Dr. Patel began treating her – and reported essentially normal findings and a good prognosis. (R. 371-73) Dr. Kline completed a physical RFC assessment of Plaintiff in January 2010 and opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, that she could stand or walk for six hours in an eight-hour work day, and could sit for six hours in an eight-hour work day. (R. 384-390) The ALJ stated: "Dr. Kline had the opportunity to review all the medical evidence in this case and his opinion was given great weight as it supports the determined RFC." (R. 17) At the time of his RFC assessment, however, Dr. Kline did not have the benefit of Dr. Patel's notes. Without knowing the weight the ALJ assigned to Dr. Patel's records, I cannot determine if the ALJ's opinion is supported by substantial evidence; remand on this point is necessary for the ALJ to consider Dr. Patel's notes and specify the weight accorded to his opinions.

...

*2.     Plaintiff's Remaining Allegations*

Plaintiff also argues that the ALJ improperly evaluated her RFC, her credibility, and her severe impairments, as well as posed an incomplete hypothetical question to the VE.  Because I find remand is appropriate due to the ALJ's failure to properly evaluate Dr. Patel's and Mr. Folsom's opinions, it is unnecessary to address the Plaintiff's remaining contentions.

D.     *Conclusion*

For the reasons previously discussed, the Court recommends that the ALJ's decision be reversed and the case be remanded for further consideration of Dr. Patel's and Mr. Folsom's opinions consistent with this Report and Recommendation.  Accordingly, it is hereby

RECOMMENDED:

1.     The decision of the Commissioner be REVERSED and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation; and

2.     the Clerk of Court be directed to enter final judgment in favor of Plaintiff.

IT IS SO REPORTED in Tampa, Florida on August 5, 2013.

*[signature]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).